UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14-CV-628-TBR

DOUGLAS GREENE,                                                                    PLAINTIFF

v.

INDEPENDENT PILOTS ASSOCIATION, et al.,                                            DEFENDANTS

## Memorandum Opinion & Order

This matter comes before the Court upon two Motions. First, Defendants, the Independent Pilots Association and its officers, (hereinafter referred to collectively as "IPA"), have filed a Motion for sanctions and a protective order against *pro se* Plaintiff Douglas Greene ("Greene"). [DN 83.] Second, Greene has filed a Motion for sanctions against IPA. [DN 84.] Therein, Greene also seeks a protective order. [*Id.*]

These matters are ripe for adjudication. For the following reasons, IPA's Motion [DN 83] is **GRANTED in part and DISMISSED in part**, and Greene's Motion [DN 84] is **DENIED in part and DISMISSED in part.**

## I. Factual Background

### A.

A detailed history of the facts of this case was provided by the Court in its Memorandum Opinion granting IPA summary judgment. [*See* DN 78.] A summarized version of that factual background section is included below:

Greene was formerly employed by United Parcel Service ("UPS") from 1994 to November 2013 when he was terminated. During the course of his employment, IPA filed a grievance on his behalf in 2011, stemming from an apparent first attempt by UPS to terminate

1

Greene's employment with the company. Thereafter, Greene allegedly made unsavory comments regarding IPA, despite their success in 2011, because IPA refused to publish his anonymous letter to the editor in its bi-weekly newsletter, *Flight Times*. [DN 50-3, at 3-4.] After Greene's comments, IPA designated the law firm Wyatt, Tarrant & Combs as Greene's point of contact for any further matters concerning IPA. [*Id.*]

In early 2013, Greene received a notation in his file for carrying a prohibited item onto a FedEx flight on which he was hitching a ride. The item was a pair of toiletry scissors. [*See* DN 50-47.] As a result of this, Greene spent the 2013 summer lobbying UPS and IPA officials in an attempt to have the notation removed from his file. Under the UPS-IPA collective bargaining agreement, these types of notations are not disciplinary, and therefore may not be the subject of an employment grievance. [DN 50-9, at 43.] Thus, IPA did not file a grievance concerning the notation, but individual officials from IPA were successful in lobbying UPS to add a paragraph indicating that Greene was courteous under the circumstances. [DN 50-55, at 3.] Greene did not feel that this was a successful result. [DN 50-54.]

After the toiletry scissors incident, Greene's behavior, and his statements to other pilots that fall, caused UPS to become concerned with Greene's ability to safely function as a pilot. Consequently, UPS removed him from flight status in August 2013 and notified IPA that it was investigating Greene's conduct. [DN 50-3, at 5.] Pursuant to Article 7.B.2, when UPS removes a pilot from flight duty, the pilot is entitled to a disciplinary hearing, at which he may be represented by IPA. [DN 50-9, at 43.] Because of Greene's acrimonious history with the association, IPA made the decision to hire outside counsel to represent Greene on its behalf. [DN 50-3, at 5.] Attorney Irwin Cutler, ("Cutler"), was chosen for this task.

Around the time of the disciplinary hearings, Michael Starnes, ("Starnes"), one of Greene's then-co-pilots at UPS, emailed Jennifer Robbins, ("Robbins"), a UPS investigator, telling her that in his opinion Greene's behavior towards other UPS employees constituted personal attacks, and that Greene's "paranoia ha[d] extend[ed] to him carrying a recording device onto UPS property and keeping files of paper with him in order to document anything that Jim [Psiones, Greene's supervisor at the Anchorage duty station,] says or does. This to me sounds like someone who is more interested in revenge than coming to work to fly airplanes." [DN 50-51, at 1.] Similarly, Captain Peyton Cook, ("Cook"), emailed Psiones on September 23 and stated that "Captain Greene's hostile and volatile personality towards fellow crew members and UPS management jeopardizes the conduct of safe flight operations." [DN 50-52, at 1.]

Another pilot, Marc McDermont, ("McDermont"), stated that in his first encounter with Greene, during a layover in Hong Kong in July 2013, "Greene spoke quite vociferously and at great length about his interactions with the company and the Kentucky Department of Revenue. He stated that there was conspiracy between UPS and the Kentucky Department of Revenue to harm him financially and to impeach his character." [DN 50-53.] McDermont also stated that, during their time in Hong Kong, Greene "said that UPS had hired several hit men who were associated with UPS' attorney….Captain Greene then stated that he had developed so much evidence of their plot to kill him that it had made it impossible for UPS to carry through with the assassination." [*Id.*] Following the internal investigation and the two disciplinary hearings, UPS decided to require Greene to submit to an additional medical examination, in accordance with the collective bargaining agreement. Greene failed to attend the first exam, came to the doctor's office for the second scheduled exam, but refused to be examined, and failed to attend the third

scheduled appointment. Thereafter, his employment with UPS was terminated on November 22, 2013. [DN 50-28, at 2.]

Following Greene's termination, IPA filed a grievance on his behalf. [DN 50-18, at 6.] The ensuing arbitration was delayed until September 2014 due to changes in attorneys and arbitrators, as well as scheduling conflicts. In the days leading up to the arbitration, Arnold Feldman, ("Feldman"), Greene's personal attorney at that time, requested that IPA completely withdraw itself from active participation in Greene's case. [DN 50-48.] Moreover, Feldman asked that Greene, rather than IPA, be allowed to appoint the two union representatives to sit on the System Board. [*Id.* at 2.] In response, Cutler agreed to allow Feldman to "represent Captain Greene at the hearing, to make an opening statement and closing statement or brief, present witnesses, cross-examine witnesses, make objections and motions and otherwise fully participate in the hearing." [DN 50-49, at 1.] However, Cutler reserved IPA's right to "participate fully in the hearing and the proceedings leading up to the hearing," and made the note that turning complete control of the arbitration over to Greene "would be an abdication of [IPA's] obligation to the membership as a whole." [*Id.*] Pursuant to the collective bargaining agreement, IPA declined to allow Greene to appoint the two union representatives. Thereafter, Greene moved unsuccessfully to have IPA excluded completely from the arbitration proceedings. [DN 50-50, at 2.]

This lawsuit followed and, generally speaking, Greene claimed that in handling his termination grievance, IPA violated both its duty of fair representation and certain provisions of the Labor-Management Reporting and Disclosure Act. [DN 1.] It is unclear whether IPA knew of the filing of this lawsuit days before the arbitration hearing, but Cutler nevertheless attended that hearing. [DN 50-18, at 15.] In a vote of 3-2, Greene's termination was upheld. [DN 50-47.]

Among other findings, the arbitrator noted Greene's "fixation" on the notation, stating that it "raised a legitimate medical issue about his judgment and focus." [*Id.* at 51.] The arbitrator further described Greene's conduct as "occupational self-destruction beyond the remedial authority of [the System Board.]" [*Id.* at 55.] Finally, the arbitrator found "no evidence of collusion between the Company and the Union." [*Id.* at 56.]

When Greene initially filed this lawsuit, he was still being represented by Feldman, but Feldman eventually moved to withdraw in November 2015. [DN 25.] Since that time, Greene has represented himself, *pro se*. On November 21, 2016, this Court granted summary judgment in favor of IPA on all of Greene's claims. [*See* DN 78, 79.] Greene appealed, [DN 80], and the Sixth Circuit Court of Appeals affirmed this Court's decision. [DN 87.] In the interim period between Greene filing his notice of appeal and the Sixth Circuit's affirmation of this Court's previous decision, IPA filed the instant Motion for sanctions against Greene and for a protective order.

**B.**

In addition to filing a Motion for summary judgment, IPA also filed an original Motion for sanctions on August 5, 2016. [DN 54.] This Court granted IPA's Motion for summary judgment and denied its Motion for sanctions. [DN 78.] In that initial Motion for sanctions, IPA claimed that on July 26, 2016, the day after it filed its Motion for summary judgment, Greene sent Christopher Harper, ("Harper"), one of IPA's witnesses, a "threatening and intimidating email." [DN 54-1, at 2.] IPA had previously submitted Harper's declaration in support of its Motion for summary judgment. [*See* DN 50-62.] In his declaration, Harper described the efforts he took to have Greene's notation corrected or removed, and stated that IPA did not attempt to

hinder his assistance of Greene. [*Id.*] The July 26 email sent from Greene to Harper states [sic throughout]:

> Dear Chris,
>
> Here's some great questions that have been already crafted for you to answer in a Federal Court of law under a lie detector. Thought it might be helpful to give you a head start on how to formulate your answers:
>
> The one question I have is who wrote Harper's declaration? It wasn't him. Looks like the IPA had their hand in this. Most people do not know how to write a declaration much less the format used.
>
> …
>
> What a terrible shame to think you were coerced to aid and abet in a Federal Crime. It's very clear you do not realize the magnitude of what you are implicating yourself in, with UPS & IPA efforts trying to thrown you under the bus to give them an alibi with your false and fraudulent "declaration," which is not even an affidavit. You have blatantly committed perjury in your falsely alleged true & correct words.
>
> We will be quite anxious to get you under lie detector, as like you "*I believe*" you will be going to jail before this is all over. Your only hope to save yourself is with your truthful testimony as to who we both know put you up to this act of obstructing justice by knowingly aiding and abetting in a Federal Crime. *(This is certainly no way to run an Airline.)*
>
> You should think long and hard about your conduct because it is already defeated with overwhelming evidence. The whole thing wreaks with the stench of vile filth and pathetic shame…I am very disappointed in you Chris Harper…My family and I will forgive you and hold you harmless for your complicity in this criminal attack against us as long as you come forward with your truthful testimony while you still can.
>
> God Bless……………..Doug Greene & Family

[DN 54-3, at 4.] In this Court's Memorandum Opinion denying IPA's Motion for sanctions, this Court noted that this email was consistent with what the Court had come to expect from Greene throughout the course of this litigation: insults and inappropriate language such as calling individuals "incompetent," "paranoid," "senile," "intoxicated," "literally insane," "uneducated

6

thugs," "a sadistic liar," "guilty of perjury," "a cabal of tyrants who think they are above the law," "UPS' errand boys, moles, bitches, whatever word you want to use in describing a traitor…Benedict Arnold," among many, many other childish and unbecoming insults. [*See* DN 78, at 48 (Court listing language used by Greene compiling from docketed filings in this case).] At the conclusion of that Memorandum Opinion, this Court noted that, although it chose at that time not to sanction Greene, it was not condoning his behavior and warned him that, setting aside his strong convictions regarding his case, it would not hesitate to sanction him in the future for similar behavior.

In its instant Motion, IPA has included more information concerning Greene's behavior in this case. IPA notes that, on the same day Greene sent the above email to Harper, he also sent an email to Cutler. [*See* DN 83-1.] Attached to this Motion is a signed affidavit, ("Cutler Affidavit"), from Cutler attesting to the validity of the email. The email, dated August 5, 2016, states in pertinent part as follows [sic throughout]:

Mr. Cutler,

Thanks for your help, just more evidence to use against you for your criminal behavior that I will be forwarding to the Federal Authorities with everything else they have been given and more to follow. This is no threat either, it's a promise to help ensure that the law is enforced as you are not above the law, nor is the IPA, UPS, FBT [Frost Brown Todd law firm] or any other victims you mislead into aiding & abetting in your criminal actions. I've also carbon copied others to this E-Mail in the blind as witnesses to the truth of its content and the documents you provided to assist me in exposing your criminal conduct in further harassing me through threats and intimidation for defending myself against your crimes.

Your fraud is almost funny Cutler, as you just keep digging a deeper and deeper whole for yourself…Now you are in too deep and believe the only way out is to sustain the blatant trail of criminal RICO Act fraud……………Good luck with that one Cutler….It's just so sad that you, the IPA GC & IPA ED are fraudulently implicating other pilots like Chris Harper that aren't smart enough to know any better. It's obvious you people don't care & have no conscience when it comes to hurting other people to conceal your RICO Act fraud at any cost….

…

Are you afraid of an Affidavit of Truth, Cutler and why did you commit further Fraud Upon the Court in your filings on the docket calling Declarations of Fraud an Affidavit of Truth? Sorry Buddy Ole Pal, you just dug your hole even deeper with yet another lie that you are going to have to find your way out. We can't wait to see how you try to explain away all the truth of the perjury….

Seek the face of God Irwin Cutler as it's your only hope to find forgiveness for your gross malfeasant & criminal behavior….

My family is praying for you…………..Doug Greene

[DN 83-4, at 2-3.] In addition to this email directed at Cutler, IPA in its instant Motion also notes that Greene allegedly "threatened the three pilots who testified against him at the arbitration hearing, including Michael Starnes who is the object of Greene's most recent threat." [DN 83-1, at 3.] IPA has filed an affidavit from Starnes, ("Starnes Affidavit"), wherein he attests to the truth of the attached email from Greene to himself. [*See* DN 83-7.] The substance of this email is as follows:

Michael,

I'm so sorry UPS has abused you with Workplace Violence holding your career over your head for so many years now since 21 Nov 2009, by coercing you into terrible acts against other pilots.

You should be advised that we know about the other pilots you were coerced by UPS into targeting. We know that you were purposely inserted on my flight to help UPS stage there unlawful attack against me.

…

I'm sure it must be extremely difficult to live with the pain & suffering you have caused so many victims of UPS/IPA Workplace Violence. Like the good Lord, there is forgiveness but only when you reconcile your actions with the truth.

We've been working around the clock for what comes next that is outside the "Citizens United" UPS sphere of undue influence. Coming forward with the truth of what UPS forced upon you is the only logical answer for you now so as to minimize the consequences of your [intentional misconduct]. The transcripts of the actual cockpit recording & witness testimony defeats your untruthful

statements. Not to mention all the countless E-Mails between you and Robbins. This evidence & more, [Beyond Reasonable Doubt], that was formerly "suppressed" is now In The Record for a Trier of Fact to see.

Also per 14 CFR 61.153(c) candidates for a ATP license MUST "Be of Good Moral Character." This is not an option Michael, it is a MANDATORY requirement.

Lacking Good Moral Character Defined:
"[Falsification of documents], embezzlement, and [acting in a malicious manner towards others] are cited as reasons that ATP certificates have been denied or revoked."

…

Michael, I'm sure you must realize by now we will see that justice runs its course until realized, which is finally on the horizon. We have recruited assistance of those that share in finding this matter deplorable beyond comprehension. Acting as a Pro Se Attorney on my own behalf, I have become an attorney within my own rights. Please set yourself free from the bondage that UPS has shackled you with by reaching out to me as soon as possible.

We both know deep down in your heart this is the only way for the necessary healing of everyone. As I'm sure you know my family has already suffered far too long.

May God guide you the right way as he guided me to reach out to you.

Doug Greene
Attorney Pro Se

[DN 83-8, at 2-4.] In the Starnes Affidavit, a second letter Greene wrote to Starnes is referenced,

and IPA has also attached it to the instant Motion. This earlier letter, dated November 4, 2015,

provides in pertinent part as follows [sic throughout]:


Dear Michael Starnes,

I'm sending this E-Mail to inform you that your conduct to have been implicated in perjury and Racketeering Influenced Corrupt Organization (RICO) Actions have been submitted to a United States Senator and an investigation is now underway which will involve the United States Department of Justice (DOJ). Despite the fact your actions having caused irreparable damages to my family and

career, you are being afforded the opportunity to come forward with immunity to tell the truth of UPS and IPA influence to solicit your false statements to assist them in fraudulent retaliatory targeting of my career. You should know that we have witnesses that have already come forward, in confidentiality, testifying to your illicit actions. In addition we are aware of the threats UPS posed against you as a result of your DUI on 21 November 2009 resulting in your being coerced to participate in this crime, that has yet to be determined if it was properly disclosed to the Federal Aviation Administration….

Please be advised that the [FAA] will be involved in this investigation and in accordance with the following **U.S. CODE OF FEDERAL REGULATIONS** should you choose to continue in sustaining the fraud that you have committed on behalf of UPS and the IPA, you will be putting your Airline Transport Pilot Certification at risk not to mention being subject to imprisonment….

…

I would encourage you to give careful consideration in taking advantage of the opportunity to come forward with your truthful testimony. My family will extend to you forgiveness for your actions and will not seek further legal action against you….I would caution that you should keep this opportunity in the strictest of confidence as should you disclose this information to anyone allowing UPS or the IPA to become aware of this action you will be further implicating yourself in these RICO Act crimes that will be subject to violations of U.S. Code of Federal Regulations (CFR) which are punishable by fines up to and including imprisonment.

…

This letter will be sent to you via certified return receipt to your home of record, which has also been provided to the officials investigating these crimes. You can contact me for further instructions to contact the United States Senators Office so as to provide your sworn statement….

Fraternally,

Captain Douglas W. Greene

[DN 83-9.] Finally, Greene contacted Cutler again in an email dated July 14, 2017 where, in addition to attaching a copy of his appeal brief, he stated the following:

Be advised your direct & indirect UPS employer proffering a combined settlement offer on behalf of **ALL** the complicit players, in the amount formally stated, will be *considered* to compensate my family and I for the malicious & enormous damages inflicted. This will be mandatory to alleviate the necessity to

pursue criminal charges of **ALL** those involved and exposing this criminal endeavor to the Court of Public Opinion next.

[DN 83-3.] It is the sum of these interactions that Greene has had with various individuals involved with this case, both before it was instituted and after its inception, that IPA now seeks to have sanctions levied on Greene, as well as a protective order entered to prevent this type of conduct from Greene directed at witnesses, opposing counsel, parties, and their employees and agents going forward. [*See* DN 83.] In his Response to the instant Motion, Greene, of course, argues that sanctions should not be imposed, and also asks for sanctions against IPA and a protective order of his own. [*See* DN 84.] The merits of these Motions are discussed below.

### II. Legal Standard

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). "A primary aspect of that [inherent] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45. As the Sixth Circuit Court of Appeals has noted, "[a] district court has the inherent power sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders. *Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *2 (6th Cir. Jun. 10, 2008) (citing *Chambers*, 501 U.S. at 43-50). This inherent power extends further, though, to "conduct 'tantamount to bad faith.'" *Id.* (quoting *Railway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)) This "inherent authority to sanction derives from [the court's] equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Id.* (citing *Chambers*, 501 U.S. at 43).

## III. Discussion

## A. IPA's Motion

As noted above, IPA seeks with its present Motion two things: first, a protective order, and second, sanctions. The Court must at this time dismiss the Motion insofar as it pertains to the protective order, as this case is closed and the Sixth Circuit Court of Appeals has issued its opinion affirming this Court's grant of summary judgment in favor of IPA. [*See* DN 87.] This leaves the issue of IPA's appeal to this Court for sanctions against Greene stemming from his continued pattern of uncouth behavior, both before and after this Court's grant of summary judgment. As IPA has correctly pointed out, "[t]his Court continues to possess th[e] inherent power even after final judgment [to issue sanctions] because [a] motion for sanctions raises issues collateral to the main cause of action." [DN 83-1, at 7 (citing *White v. N.H. Dept. of Employment Sec.*, 455 U.S. 445, 450 (1982)).]

## 1.

It is a clearly established maxim in American jurisprudence that "the power to punish for contempts is inherent in all courts." *Chambers*, 501 U.S. at 44 (internal citations omitted). "This power reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not…merely the disruption of court proceedings. Rather it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)). Relatedly, a court, consistent with the inherent powers bestowed upon it, "may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)).

This means that, "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party," the same way "it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Id.* (quoting *Universal Oil Prods. Co. v. Roof Refining Co.*, 328 U.S. 575, 580 (1946) and *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978), respectively). To be sure, "[t]he imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.* (quoting *Hutto*, 437 U.S. at 689 n.14).

Importantly, the promulgation of Fed. R. Civ. P. 11 did not eliminate or otherwise supersede this Court's inherent authority in this realm. As the Supreme Court explained in *Chambers*, "Rule 11 d[id] not repeal or modify existing authority of federal courts to deal with abuses…under the court's inherent power." *Id.* at 48-49 (internal citations omitted). Indeed, "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49. Consequently, "[t]here is…nothing in other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." *Id.* at 50. Thus, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task," or neither the statute nor the Rules are applicable, "the court may safely rely on its inherent power" to sanction a party. *See id.*

**2.**

It is this Court's inherent authority upon which it relies in reaching its conclusion that

sanctions are warranted in the present case in the form of IPA's attorney's fees and costs in

bringing the instant Motion. Greene's conduct throughout the life of this case, both in the time

leading up to this Court's grant of summary judgment in November 2016, as well as while the

case was pending on appeal before the Sixth Circuit, has led this Court to the conclusion that he

has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," under the meaning of

the Supreme Court's rationale in *Chambers*, 501 U.S. at 46. Greene's interactions and

correspondence with witnesses and opposing counsel have left this Court with no other option

but to sanction him.

"A federal court's authority to protect the integrity of its proceedings encompasses the

authority to take reasonable actions to avoid intimidation or coercion of witnesses." *United*

*States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007) (citing *United States v. Wind*, 527 F.2d

672, 674-75 (6th Cir. 1975)). "Trying improperly to influence a witness is fraud on the court and

on the opposing party…." *Ty Inc. v. Softbelly's. Inc.*, 517 F.3d 494, 498 (7th Cir. 2008). Stated

succinctly by the District Court for the Southern District of Illinois, "[l]itigants that attempt to

coerce witness[es] into giving false testimony abuse the truth-seeking function of the courts and

obstruct the courts' ability to solve disputes accurately and efficiently." *Ramsey v. Broy*, No. 08-

cv-0290, 2010 WL 1251199, at \*4 (S.D. Ill. Mar. 24, 2010); *see also* 18 U.S.C. § 1512(b)

explaining that

> Whoever knowingly uses intimidation, threatens, or corruptly persuades another
> person, or attempts to do so, or engages in misleading conduct toward another
> person with intent to (1) influence, delay, or prevent the testimony of any person
> in an official proceeding; (2) cause or induce any person to (A) withhold
> testimony, or withhold a record, document, or other object, from an official

proceeding…shall be fined under this title or imprisoned not more than 20 years, or both.

"[C]ourts have broad discretion under their inherent powers to fashion punitive sanctions." *Williamson v. Recovery Limited Partnership*, 826 F.3d 297, 306 (6th Cir. 2016)

Greene's inappropriate behavior began at the inception of this case. As discussed above, Greene consistently engaged in reckless name-calling, often utilizing foul language to disparage witnesses, opposing counsel, and the Court. This Court documented many of the terms used by Greene above, and also in its Memorandum Opinion granting IPA summary judgment. [*See* DN 78, at 48.] He has used derogatory words to describe individuals as incompetent, paranoid, senile, intoxicated, literally insane, uneducated thugs, sadistic liars, he has said people were guilty of perjury, he has called people UPS errand boys, moles, bitches, Benedict Arnold, and more. [*See id.*] While this language was uncalled-for and unbecoming of an individual presenting a civil action to a federal court, this Court chose not to sanction him in November 2016 when it granted IPA summary judgment. [*Id.*] Indeed, at this time Greene had already made inappropriate contact with Harper via email, indicating that Harper would be required in federal court to take a lie detector test, accusing him of aiding and abetting a federal crime, committing perjury, and stating that he believed Harper would eventually be sent to prison. [*See* DN 54-3, at 2.] He ended the email to Harper by stating that he would forgive Harper for his criminal activities if Harper would come forth with "truthful testimony." [*Id.*] In other words, the email laid out criminal accusations (*i.e.*, threats of criminal prosecution) followed by an attempt to get a witness to change their statement.

Prior to this Court's grant of summary judgment to IPA, Greene also sent similar emails to Cutler and Starnes. With respect to Cutler, as noted above, Greene accused him of aiding and abetting criminal acts, engaging in fraud, being implicated in a RICO action, committing fraud

against the court, and perjuring himself. [DN 83-4, at 2-3.] He concluded by telling Cutler to "seek the face of God…." [*Id.* at 3.] The email to Starnes, who is not a lawyer by trade, is even more disturbing. Greene explicitly stated that Starnes' actions constituted perjury and implicated him in a RICO action that Greene allegedly submitted to an anonymous United States Senator and the DOJ. [DN 83-9.] After going on to accuse Starnes of committing fraud and indicating that Starnes could face imprisonment, Greene urged him to take "advantage of the opportunity to come forward with your truthful testimony," and, in exchange Greene would cease seeking legal action against him. [*Id.*] And while the Court did not sanction Greene in 2016, it made specific note of the fact that it would not hesitate to sanction him in the future should he refuse to cease his inappropriate conduct. We have reached that point in the road.

Greene has not heeded this Court's advice and warnings, and has continued to engage in seriously inappropriate conduct. IPA has brought to the Court's attention two such additional instances which, when coupled with Greene's previous behavior, give this Court no choice but to sanction him. First, Greene contacted Cutler again via email, indicating that he wished to be paid a settlement and that, in return for this "mandatory" sum, the necessity of pursuing criminal charges against everyone involved would be alleviated. [DN 83-3.] Second, Greene sent another email to Starnes, in which he used religion and God as a means by which to apparently try and convince Starnes to come forward with a statement more to Greene's liking and benefit. [*See* DN 83-8, at 2-4.] He implored Starnes to reach out to him as soon as possible, indicating that this was the best way to avoid criminal consequences to Starnes who, again, is not a lawyer by trade and therefore has no expertise in legal matters. [*Id.*] Finally, he concluded by using religion another time: "May God guide you the right way as he guided me to reach out to you." [*Id.*] These emails, sent both during this case's time in this Court, as well as while the case was on

appeal before the Sixth Circuit, manifest blatant bad faith and oppressive means on the part of Greene, consistent with the Supreme Court's ruling in *Chambers*, 501 U.S. at 46, thereby permitting this Court to act in its inherent authority to impose sanctions against Greene.

However, if these specific findings by the Court were, by themselves, insufficient, Greene's Response and Counter-Motion to the instant Motion remove all doubt. [*See* DN 84.] It is captioned as "Greene's Response to Independent Pilots Association, et al. Fraudulent Motion for Sanctions & Protective Order with Greene's Counter Motion for Sanctions of Fifty Million Dollars for Insurmountable Damages of Independent Pilots Association, et al. Fraudulent Attacks of Workplace Violence & RICO Act Fraud," and it contains much of what the Court has come to expect from Greene throughout the life of this case.

Greene chooses to fill in a great deal of the Response and Counter Motion with insults and accusations directed at UPS, IPA, opposing counsel, witnesses, and the Court. Indeed, much of the Response is dedicated solely to this exercise in finger-pointing. He accuses Cutler of engaging in bad faith conduct throughout the course of litigation, [*id.* at 4], of being "knowingly complicit with UPS in RICO Act fraud willfully, knowingly, & continuing to target Greene's career," [*id.*], that Cutler has violated numerous federal statutory provisions including 18 U.S.C. § 4 (misprision of felony), 18 U.S.C. § 1001 (false statements, concealment), 18 U.S.C. § 1505 (obstruction), 18 U.S.C. § 1512 (tampering with a witness, victim, or an informant), among others, [*id.* at 5], that he, Greene, has suffered acts of "domestic terrorism," presumably at the hands of UPS and/or IPA, [*id.* at 7], that Cutler committed fraud upon the Court, [*id.* at 14], that Cutler, on behalf of IPA and UPS, "has established grounds for his criminal prosecution, sanctions, and the disbarring from ever practicing law again for knowingly sustaining criminal acts on behalf of IPA against Green," [*id.* at 16], that Cutler and his law firm have abused the

legal system and are attempting to cover up the truth of what happened, [*id.* at 17], that the instant Motion for sanctions filed by Cutler is "fictitious, fraudulent, & threatening," and that Cutler has abused the justice system in bringing it, [*id.* at 32], he accuses Cutler of slander and libel, as well as abusive and threatening behavior, [*id.* at 32-33], of sustaining corporate fraud by UPS and "exercis[ing] damage control for committing gross acts of fraud to evade the legal consequences that he knows are forthcoming," [*id.* at 33], among many, many other insults and accusations.

At one point, Greene states that he is "[n]ow faced with having to initiate criminal charges against the parties involved," and has made "one last professional attempt to *encourage the truthful testimony* of Starnes again in exchange for Greene to hold Starnes harmless with the proven acts of Starnes['] *intentional misconduct* that both UPS & IPA coerced him into." [*Id.* at 38 (emphasis in original).] He then accuses Starnes again of perjury. [*Id.*] Later, he goes on at length regarding his accusations that Cutler, UPS, and IPA committed "blatant acts of witness tampering/retaliation" with respect to this case. [*Id.* at 49.] The Court could go on, *ad nauseam*, describing the various criminal acts Greene accuses Cutler, UPS and IPA of, as well as various witnesses, but the Court finds it sufficient to state that the majority of the 77-page Response is dedicated to such accusations of misconduct. As a final detail, though, the Court makes specific note of the vast conspiracy Greene alleges to have been constructed by UPS, IPA, Cutler, this Court, United States Senator Mitch McConnell, and United States Secretary of Transportation Elaine Chao. Greene calls this Court "the 'Mitch McConnell' controlled U.S. District Court," which "puts UPS/IPA interests ahead of justice;" he claims that this Court has "sustained acts of **Domestic Terrorism** against Greene," has encouraged fraud in this case, and has "demonstrated

an appearance of impropriety, lacking honesty, integrity, impartiality, temperament, and fitness to serve as a judge during these proceedings."

Apparently, Greene has determined that Senator McConnell, of Kentucky, exercises complete political control over the United States District Court system within this State and, [*id.* at 32], more specifically, that his "control" over the federal courts in Kentucky has resulted in the rule of law being thrown out the window in favor of corporate interests and a specific intent to, apparently, do him harm. Finally, he appears to implicate Chao, who is married to McConnell, of influencing and ordering thrown out a Department of Labor investigation into wrongdoing against him in this case. [*Id.* at 40-41.] He does not elaborate on this accusation, nor present any evidence concerning it.

In sum, Greene's continued disrespect, inappropriate behavior, disregard for rules, and failure to heed warnings from the Court, has led to this point, at which time sanctions must be levied against him. Greene's conduct, both with respect to his contacting individuals via email with thinly-veiled, and sometimes outright, threats of criminal prosecution, coupled with his insistence that witnesses change their statements, falls squarely within what the Sixth Circuit and the Supreme Court have classified as "litigat[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citing *Big Yank Corp. v. Liberty Mutual Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) and *Alyeska Pipeline Serv. Co.*, 421 U.S. at 247). IPA is hereby awarded attorney's fees and costs incurred in bringing the instant Motion. [DN 83.]

### B. Greene's Motion

In filing his Response to IPA's Motion for Sanctions and a Protective Order, Greene moved for sanctions and a protective order of his own. [DN 84.] As explained above, though,

this Court no longer has the jurisdiction to grant a protective order, and so that portion of Greene's Motion must be dismissed. Additionally, the Court will deny Greene's Motion insofar as he has requested that the Court levy sanctions against any of Cutler, his law firm, IPA, and/or UPS. The Court has already determined that Greene's misconduct has warranted the imposition of sanctions against him. It therefore follows that the Court will not reward Greene by issuing sanctions against Cutler, his law firm, IPA, or UPS.

Even setting aside the fact that Greene has already been sanctioned by the Court, his 77-page Response spans 37 pages beyond the 40-page limitation imposed by Local Rule 7.1(d). Pursuant to LR 7.1(d), "[m]otions and responses may not exceed 40 pages without leave of Court." Greene did not receive leave to exceed the page limitation and, consequently, the Court only considers the first 40 pages of his Response. These first 40 pages (and the 37 remaining pages) are dedicated largely to unfounded accusations of criminal conduct, none of which are backed up by actual evidence. The Court will not lay out these accusations here, as sufficient detail was provided in the Factual Background Section and the Discussion section dealing with IPA's Motion for sanctions. Put simply, Greene has not proffered any substantiated reason as to why Cutler, his law firm, IPA, or UPS should be sanctioned, instead relying upon these aforementioned and unfounded theories and accusations. This Motion must be denied.

## IV. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1. IPA's Motion for Sanctions and a Protective Order [DN 83] is **GRANTED in part and DISMISSED in part.** The Court will grant the Motion insofar as it pertains to sanctioning Greene and dismiss the Motion insofar as it requests a protective order.

2. Greene's Motion for Sanctions and a Protective Order [DN 84] is **DENIED in part and DISMISSED in part.** The Court will deny the Motion insofar as it pertains to sanctioning UPS, IPA, Cutler, or his law firm and dismiss the Motion insofar as it requests a protective order.

3. Mr. Cutler is **HEREBY ORDERED** to file with the Court an itemized statement of costs and an itemized billing statement evidencing all costs and fees directly associated with bringing the instant Motion for sanctions within **thirty (30) days** of the publication of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

cc:     Counsel of Record

Douglas Greene, *pro se* plaintiff